# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| DARNELL LAMAR HARRIS, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. CV410-069 |
| ) | CR407-285 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Darnell Lamar Harris moves for 28 U.S.C. § 2255 relief. CR407-285, doc. 51. For the following reasons, his motion should be denied.

## I. BACKGROUND

During a police stop on a Savannah, Georgia street, police officer Trinia Mayes[1] seized from Harris a gun that he initially pointed at her and then dropped. Doc. 38 at 29-30; doc. 39 at 9-10, 30; Presentence Investigation Report (PSI) at 1.[2] Harris was indicted for possessing a

---

[1] Although Harris refers to her as "McGee," see, e.g., doc. 55 at 4, the Court will use her current name. Doc. 39 at 11.

[2] As will be shown below, Harris first denied that he possessed the gun, then admitted it, and now denies it again. He has consistently denied, however, pointing any gun at Mayes.

firearm following a felony conviction, in violation 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 1. Represented by appointed counsel Charla A. Hall, he plea-bargained and ultimately pled guilty. Docs. 27, 28, 32. During his guilty-plea hearing, he at first denied that he had possessed the firearm.

> THE COURT: Did you have a weapon?
>
> DEFENDANT: No, sir, I didn't.

Doc. 38 at 33. The Court then recessed:

> THE COURT: Mr. Harris, we recessed so you could confer with your lawyer. I asked you did you possess the firearm. You said no. Do you wish to answer the question again?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Tell me.
>
> DEFENDANT: I accept full responsibility for having the firearm, sir.
>
> THE COURT: Did you possess it?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Did you have it in your hand, on your body, or somewhere?
>
> DEFENDANT: Yes, sir. Yes, sir.

THE COURT: Has anyone forced you to make this concession?

DEFENDANT: No, sir.

THE COURT: Is it truthful?

DEFENDANT: Yes, sir.

THE COURT: Do you wish to withdraw your plea in any way?

DEFENDANT: No, sir.

Doc. 38 at 33-34.

Problems arose at sentencing, however, where United States Sentencing Guidelines (USSG) computations in the PSI added 6 "Offense Level" points for pointing the firearm at Officer Mayes.[3] PSI at 5. Plus, the PSI concluded, Harris had refused to accept responsibility for his conduct, which deprived him of a 3-level reduction in his Offense Level:

> During the Rule 11 hearing, the defendant stated that he accepted responsibility for having a firearm. The defendant was interviewed by the probation officer in the presence of his counsel, immediately following the Rule 11 hearing. The defendant stated that he and others were washing cars in the street across from the vacant house when the officer arrived. The defendant stated he had a cell phone in his hand and not a gun. The defendant claims that the gun was

---

[3] Mayes "noticed . . . Harris, pointing what she believed to be the muzzle of a weapon in her direction. [She] drew her service weapon and commanded him to drop whatever he had in his hands." At first he hesitated, then complied. PSI at 3; PSI Addendum at 2.

> located underneath a car that he was washing. He stated that he accepts responsibility because the gun was located near him. Although the defendant entered his plea in a timely manner, his statements are inconsistent with a clear demonstration of acceptance of responsibility. Both officers involved in this case clearly assert that they saw the defendant throw the gun down when ordered to drop the object in his hands. Therefore, a reduction for acceptance of responsibility is not recommended.

PSI at 4 ¶ 10; *see also* doc. 39 at 5-6 (sentencing hearing wherein probation officer reiterated this).

The sentencing judge heard from police witnesses about the gun. Doc. 39 at 7-27. Mayes testified that she had been investigating a loitering incident involving a group of men on a Savannah street:

> I was dealing with one subject that was standing in front of me on the grass. And I looked at Mr. Harris, and I noticed something shiny in his hand *pointed towards me*. And I advised him whatever he had in his hand he needed to drop it. He didn't move. So, at that time, I drew my service weapon, and I advised him again, whatever he had in his hand he needed to drop it. And that's when he tossed on the ground a gun.
>
> Q. Were you able to clearly see that it was a gun which he threw from his hand?
>
> A. Yes.

Doc. 39 at 16-17 (emphasis added). Harris insisted that he did not point his gun at her. Doc. 39 at 31-32. His attorney argued that point, too:

4

> MS. HALL: I would just like to reiterate that there aren't enough facts that he was actually assaulting her. He does admit that he had the weapon and he did have the weapon in his hand, but not that he was thinking about or using it against her.

*Id.* at 33. To that end, Hall had just cross-examined Mayes and illuminated her earlier state-court testimony during a preliminary hearing, which arguably contradicted her sentence hearing testimony. *Id.* at 21-22. Hall also elicited testimony from another police officer, who read a portion of his grand jury testimony in this case:

> Another female police officer came up to assist [Officer Mayes]. At this time, [Mayes] noticed one subject later identified as Mr. Harris with what appeared to be the muzzle of a firearm *sticking out of his pants*. She pretty much told the subject, Mr. Harris, to put off whatever you have in your pants. He reluctantly -- she drew her service weapon, and ended up recovering a firearm from his person.

Doc. 39 at 26. (The officer, however, noted that his knowledge was based solely on his reading of police reports. *Id.* at 26, 27.) Hall illuminated that part of the testimony -- which made no mention of Harris *pointing* his gun at anyone -- to the sentencing judge. *Id.* at 28.

Nevertheless, the judge accepted the PSI's findings and recommendation, and thus concluded that Harris in fact had pointed his gun at Mayes. He then sentenced him to 112 months -- within the

5

guidelines range. Doc. 39 at 34-35[4]; *see also* doc. 31 (judgment). Still represented by Hall, Harris unsuccessfully appealed. Docs. 33 & 48. He argued there "that the court erred in finding that he was committing an assault while in possession of the firearm." Doc. 48 at 3. The Eleventh Circuit rejected this argument: "Because the testimony supported the offense-level enhancements and we accord great deference to the district court's determination of witness credibility, we are bound to hold that the court did not clearly err when it found that appellant was committing an assault on a law enforcement officer while he was illegally in possession of a firearm." *Id.*

## II. ANALYSIS

### A. Harris's § 2255 Claims

In a rambling, somewhat chaotic, and inconsistent presentation spread over a form § 2255 motion and two briefs, docs. 51, 52 & 54, Harris at first references the testimonial contradiction set forth above as to whether he pointed his gun at the officer or merely had in his pocket.

---

[4] So, Harris lost the USSG, 3-point reduction for acceptance of responsibility. PSI at 5 ¶ 18.

This inconsistency, he insists, constitutes police perjury both before the grand jury and at sentencing. From there he reasons that his "*conviction cannot stand [because the] government failed to correct key [grand jury] witness . . . false testimony.*" Doc. 52 at 3 (emphasis added). Harris thus elevates his complaint about a sentencing enhancement (via testimonial inconsistency) as cause for vacating his conviction outright. Doc. 52 at 1-4; *see also* doc. 55 at 3-5.

From there Harris ramps up his § 2255 quest, insisting (and now, once again, flip-flopping) that he never possessed *any* gun. He thus offers an "actual innocence claim that he did *not* possess the gun as it was found near him and other's persons [sic] in that area. Defense counsel informed [Harris] that it was his best interest to plea to the gun and get a sentence[] between 21 and 37 months [he got 122]. If not for counsel[']s bad information [Harris] would have [gone] to trial." Doc. 52 at 7 (emphasis added).

He continues this in a brief he filed in reply to the government's response. Doc. 55 at 2-3 (follow-up brief with Statement of Facts where Harris basically denies even having a gun in his possession); *id.* at 7

7

(faulting Hall for failing to investigate the case: "Then defense counsel could had interviewed witnesses that would had truthfully testified that, petitioner was never in possess [sic] of any weapon, this was very perjudice [sic] to petitioner."). Harris plies other such generalized conclusions throughout his filings: "The apparent effort of the prosecution to conceal the true nature of its dealing with its key witness should have been found adequate to dismiss such charged against petitioner." Doc. 52 at 4; *see also* doc. 55 at 3 ("and if the agents [sic] was truthful, no grand jury would with in [sic] reasoning would have indicted petitioner"). The Court will call all of these assertions "Ground One."

In what the Court discerns as Ground Two, Harris argues that he should be let out of his plea because his lawyer misadvised him to plea "based on the facts that he . . . would be sentence[ed] between 21 to 37 months[]" and the government promised that it would not object to a PSI recommendation of a 3-level reduction for accepting responsibility; nor would the government argue for an above-guidelines sentence, yet it broke both these promises. Doc. 52 at 3.

## B. Governing Standards

Two sets of governing principles must be applied here. First, "the two-part [*Strickland v. Washington*, 466 U.S. 668, 687 (1984)] test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Lalani v. United States,* 315 F. App'x 858, 860-61 (11th Cir. 2009). Second, a defendant who enters an unconditional plea of guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior* to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (emphasis added). That is, "[a] defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003). The bar applies both on appeal and on collateral attack. *See United States v. Broce*, 488 U.S. 563, 569 (1989). "A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering a 'conditional

guilty plea' in accordance with Federal Rule of Criminal Procedure 11(a)(2)." *Pierre*, 120 F.3d at 1155.

Because Harris entered no conditional guilty plea, he now may only challenge any pre-plea constitutional claim by showing that the advice he received from his counsel undermined "the voluntary and intelligent character of the plea." *Tollett*, 411 U.S. at 267. This includes "defects in the procedure by which the plea was received or circumstances which make the plea other than voluntary, knowing and intelligent," 5 WAYNE R. LAFAVE, ET AL., CRIMINAL PROCEDURE § 21.6(a) (3d ed. 2010), and, in a related context, that the guilty plea was "induced through threats, misrepresentations, or improper promises, [such that] the defendant cannot be said to have been fully apprised of the consequences of the guilty plea. . . ." *Williams v. McNeil*, 2010 WL 3384927 at * 5 (S.D. Fla. Jul. 20, 2010) (citing *Mabry v. Johnson*, 467 U.S. 504, 509 (1984)).

## C. The Merits

Even assuming no waiver, the Court rejects Harris' "police perjury" claim (Ground One) outright. Harris complains about the disparity between the testimony of one police witness (that the gun

merely stuck out his pocket) and that of another (that he pointed the gun at an officer). But Harris was indicted only for gun possession, *not for assault*. Hence, each officer's testimony was consistent with the crime charged -- that Harris *possessed* the firearm. If anything, the discrepancy *assisted* Harris at sentencing, for Hall was able to point to it in urging a non-gun-assault finding. For Harris to insist that the discrepancy somehow exonerates him of *possession* is just plain ludicrous.

For that matter, Harris points to nothing to show that his plea was involuntary,[5] so he waived his right to complain about any grand jury testimony by pleading guilty. Nor does he cite any other valid legal grounds for undoing his guilty plea. Too, his plea admission that he in fact possessed the gun "carr[ies] a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Indeed, in cases like this one, where "the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore

---

[5] He does not deny that the guilty-plea judge thoroughly explained to him his maximum sentence exposure, doc. 38 at 18, and that at best his lawyer could only estimate, not promise, a sentence within that maximum range. *Id.* at 21-22. Harris does not claim that he was misled about, or misunderstood, any of that.

11

falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (affirming district judge's denial of a defendant's motion to withdraw his guilty plea). Ground One therefore must be denied.

As for movant's claim that his lawyer should have investigated and litigated away the evidence against him, that claim also fails outright. In fact, his reply brief simply ignores what the government underscored for him -- that his guilty plea waived all nonjurisdictional defects[6] in the proceedings -- and that that waiver

> extends to claims of ineffective assistance of counsel that do *not* attack the voluntariness of the guilty plea. *See Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981), *cert. denied*, 456 U.S. 992, 102 S. Ct. 2275, 73 L.Ed.2d 1288 (1982). *See also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam) (holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea). Exceptions to the general rule are those cases which are constitutionally infirm because the government has no power to prosecute them at all. . . . *See Broce*, 488 U.S. at 574-575. Thus, a voluntary guilty or no contest plea constitutes a waiver of all nonjurisdictional defects in the proceeding up to that point. [Harris's] claims challenging the representation of counsel with regard to the investigation and pursuit of possible defenses to the crimes committed do *not* relate to the voluntariness of the plea.

---

[6] The "jurisdictional exception" is discussed in 5 LAFAVE, CRIMINAL PROCEDURE § 21.6(a). *See also United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir. 2008) (guilty plea waived defendant's claim that 18 U.S.C. § 2251, under which he was charged, exceeded Congress's power under the Commerce Clause, because he raised no jurisdictional defect; Commerce Clause challenge addressed Congressional, not *judicial* jurisdiction, and it is only the latter type of claim that cannot be waived).

They are therefore waived by the entry of the guilty pleas.

*Anfield v. United States*, 2010 WL 1406323 at * 7 (S.D. Ga. Mar. 23, 2010) (emphasis added).

To try and fit the involuntary guilty plea requirement, Harris in effect has conjured up a positive result from a hypothetical, pre-plea defense effort, then pointed to that result in insisting that his plea is therefore "involuntary." Of course, that's just buyer's remorse by any other name, a sentiment that provides no grounds for § 2255 relief. The guilty-plea waiver applies here. The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal.

Next, to the extent that Harris faults his counsel for the sentencing enhancement arising from his pointing a gun at the arresting officer, that claim, too, must be rejected. Setting aside the government's procedural default argument, doc. 54 at 14-15, the record shows that counsel *did* litigate the sentencing-enhancement efforts, cross-examining a government witness on this point and emphasizing the testimonial inconsistency during the sentencing proceeding. Harris is simply

unhappy that she failed to convince the sentencing judge, who made bread-and-butter credibility choices against Harris. Of course, no lawyer's results are guaranteed, especially in "he said, she said" situations. An IAC finding requires a showing that *no* competent lawyer would have followed the path taken by movant's counsel. *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 751 (11th Cir. 2010). Merely saying "my lawyer fought but lost that battle and now I'm paying the price" comes nowhere close to that.

Finally, and to the extent that it is so claimed, there is no evidence that the government breached any promise to Harris. It promised that it would not object to any PSI recommendation that he receive a 3-level reduction for accepting responsibility for his crime. Doc. 32 at 2. Harris himself then failed to accept responsibility, and the Probation Officer noted that failure in his presentence report. Hence, the plea agreement was never triggered, which means this claim fails.

## III. CONCLUSION

Darnell Lamar Harris's § 2255 motion (doc. 51) should be **DENIED**. Applying the Certificate of Appealability (COA) standards,

which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  11th  day of April, 2011.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA